IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JEAN JOHNSON                                                      PLAINTIFF

v.                      CIVIL NO. 15-5309

NANCY A. BERRYHILL,
Acting Commissioner, Social Security Administration[1]        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Jean Johnson, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") under the provisions of Titles II and XVI of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.   Procedural Background:**

Plaintiff protectively filed her application for DIB on May 27, 2013, and her application for SSI on November 7, 2013. (ECF No. 10, p. 51). In her applications, Plaintiff alleges disability due to migraines, a herniated disc, peripheral neuropathy in her lower extremities,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

bilateral hip pain, meralgia paresthetica,[2] anxiety, high blood pressure, and a brain tumor. (ECF No. 10, p. 258). Plaintiff alleges an onset date of August 16, 2012. (ECF No. 10, pp. 51, 254). These applications were denied initially and again upon reconsideration. (ECF No. 10, pp. 95-144).

Thereafter, Plaintiff requested an administrative hearing on her denied applications, and this hearing request was granted. (ECF No. 10, pp. 161-62). Plaintiff's administrative hearing was held on August 27, 2014, in Fort Smith, Arkansas (ECF No. 10, pp. 67-94). Plaintiff appeared in person and was represented by Jack Rawlins. Id. Plaintiff and Vocational Expert ("VE") Seth Langley testified at this hearing. Id. At the time of this hearing, Plaintiff was forty-three (43) years old, which is defined as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). As for her level of education, Plaintiff graduated high school and earned a vocational degree as a Licensed Practical Nurse ("LPN"). (ECF No. 10, pp. 74-75).

After this hearing, on December 3, 2014, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (ECF No. 10, pp. 48-61). In this decision, the ALJ found Plaintiff last met the insured status requirements of the Act through December 31, 2017. (ECF No. 10, p. 53, Finding 1). The ALJ also found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since August 16, 2012, Plaintiff's alleged onset date. (ECF No. 10, p. 53, Finding 2). The ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, herniated nucleus pulposus at L4-5 and L5-S1 status post laminectomy discectomy, and migraine headaches. (ECF No. 10, p.

---

[2] The Mayo Clinic describes meralgia paresthetica as "a condition characterized by tingling, numbness, and burning pain in [the] outer thigh." *Meralgia Paresthetica – Overview*, MAYO CLINIC (Feb. 23, 2017), http://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/home/ovc-20308723.

2

53, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 10, pp. 53-54, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 10, pp. 54-59, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found her claimed limitations were not entirely credible. Id. Second, the ALJ determined Plaintiff retained the RFC to perform "light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except [she] needs a job with simple tasks and simple instructions." Id. The ALJ then determined Plaintiff was unable to perform her Past Relevant Work ("PRW"). (ECF No. 10, p. 59, Finding 6). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as a fast food worker and a cleaner/housekeeper. (ECF No. 10, p. 60, Finding 10). The ALJ therefore determined Plaintiff had not been under a disability, as defined by the Act, from August 16, 2012, Plaintiff's alleged onset date, through December 3, 2014, the date of the ALJ's decision. (ECF No. 10, p. 60, Finding 11).

Thereafter, on January 21, 2015, Plaintiff requested a review by the Appeals Council (ECF. No. 10, pp. 42-47). The Appeals Council denied this request on October 30, 2015. (ECF No. 10, pp. 5-11). On December 23, 2015, Plaintiff filed the present appeal with this Court. (ECF No. 1). The parties consented to the jurisdiction of this Court on January 8, 2016. (ECF No. 6). This case is now ready for decision.

**II.   Applicable Law:**

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial

evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. Teague v. Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. Id.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); See also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet

4

or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if she reaches the final stage does the fact finder consider Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion:

Plaintiff raises five issues on appeal: 1) The ALJ failed to evaluate Plaintiff's subjective complaints in accordance with Polaski; 2) In light of evidence submitted to the Appels Council, the decision must be reversed because the record as a whole, including the new evidence, does not support the ALJ's determination; 3) The ALJ failed to reach an RFC determination which is based on substantial evidence; 4) The VE's testimony was based upon a hypothetical question that did not include all those impairments that are substantially supported by the record as a whole; and 5) The ALJ failed to fulfill his duty to develop the record by ordering a consultative examination. (ECF No. 11). Because I find the ALJ erred in his analysis of the credibility of Plaintiff's subjective complaints and that substantial evidence does not support the ALJ's RFC determination, this Memorandum Opinion will focus on those two issues for remand.

#### A. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and

aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 946, 966 (8th Cir. 2003).

The ALJ determined Plaintiff's subjective complaints were not entirely credible. (ECF No. 10, pp. 56-58). The ALJ stated as follows:

> Although [Plaintiff] has described daily activities, which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding [Plaintiff] disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty.

(ECF No. 10, p. 56). The ALJ's statement that Plaintiff's daily activities cannot be objectively verified is exactly the reason for which the ALJ must engage in a proper analysis of the credibility of Plaintiff's statements regarding her subjective complaints. If the Administration assumed the position that a claimant's testimony is not credible unless every statement was objectively verifiable, there would remain little purpose in taking any claimant testimony into the record at all. This is not the standard by which the ALJ is required to examine Plaintiff's testimony.

The ALJ stated that "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking are inconsistent with subjective complaints of pain." (ECF No. 10, p. 59) (citing Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009). The ALJ's analysis is not complete, however, the moment he has determined Plaintiff can engage in any light activities at all. Plaintiff is not required to prove her impairments preclude all productive

6

activity and confine her to life in front of the television. Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996). The ALJ discounted Plaintiff's subjective complaints because her activities of daily living included some light exertional activities:

> She reports she can tend to her personal care needs but has pain when dressing and putting on shoes, stiffness in her shoulder when she cares for her hair, difficulty getting in and out of bed and on and off the toilet and a need to be careful getting in and out of the bathtub. She prepares simple meals once every two weeks or less taking thirty minutes to cook. She cleans her bathroom once a month. [She] shops in store for groceries once a month for about an hour and a half. She can handle her finances with assistance from her daughter. . . . She estimated she could walk approximately one-quarter of a mile before needing to stop and rest.

(ECF No. 10, pp. 56-57). When we discuss the credibility of Plaintiff's subjective complaints, we are discussing the amount of weight we may give Plaintiff's testimony in formulating her RFC. The Eighth Circuit in Draper v. Barnhart, 425 F.3d 1127, stated as follows:

> The fact that [Plaintiff] tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work. . . . [T]he test is whether [Plaintiff] has the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world. In other words, evidence of performing general housework does not preclude a finding of disability.

Draper, 425 F.3d at 1131 (internal citation omitted). In the present case, the ALJ did not analyze Plaintiff's activities of daily living with regard to her "ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." Id. Instead, the ALJ stated only in general terms that he "does not discount all of [Plaintiff's complaints] and recognizes that she does experience limitations," but that "her allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." (ECF No. 10, pp. 56-57).

7

### B.     RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

The ALJ makes a number of conclusory statements regarding Plaintiff's impairments without any analysis. For example, the ALJ stated, "As for [Plaintiff's] back pain, the record indicates [she] was doing better after her surgery and was encouraged to exercise and participate in physical therapy." (ECF No. 10, p. 58). However, Dr. Parker's notes from April and June 2014, indicate Plaintiff's back pain continued to worsen, despite Plaintiff's back surgery on April 22, 2014. (ECF No. 10, pp. 477, 484, 632-33). The ALJ practically quoted Dr. Parker and stated, "he reported he was afraid [Plaintiff's] regression and relative inactivity were only going to compound her problems and cause new ones," and that "he was afraid [Plaintiff] had just accepted her condition forever." (ECF No. 10, pp. 56, 847). The ALJ left

out the part of the quote where Dr. Parker stated, "I don't expect her to be physically back where she was 7-8 years ago." (ECF No. 10, p. 847). The ALJ also stated that "[Plaintiff's] pain appears to be well controlled with prescription medications." (ECF No. 10, p. 57). Elsewhere in his opinion, however, the ALJ appears to have endorsed Dr. Parker's notation that he "suspected [Plaintiff] was suffering from rebound headaches due to over use of medications, a condition [she] was aware of as she had been treated and hospitalized for it in the past." (ECF No. 10, pp. 57-58). That Plaintiff's medications adequately controlled her symptoms but were also the cause of her chronic migraine headaches is a position the ALJ never attempts to reconcile in his decision. The University of Arkansas for Medical Sciences tried to limit Plaintiff's medication use in July 2012 because of rebound headaches. (ECF No. 10, p. 827). Plaintiff's headaches continued, however, and despite whatever Plaintiff's primary care physician believed to be the cause of Plaintiff's headaches, between her specialists and Dr. Parker himself, he maintained her on the following list of medications as of August 25, 2014: Clonazepam; Effexor; Fiorinal-Codeine; Flonase; Gabapentin; Hydrochlorothiazide; Naproxen; Oxybutynin; Oxycodone; Potassium Chloride; Promethazine; Propranolol; Robaxin; Vitamin D3 Supplements; Zanaflex, and; Zyrtec. (ECF No. 10, p. 841). The record does not contain any information Plaintiff was not taking her medication as directed.

The ALJ's analysis is unclear on how he reached his RFC determination. For example, the ALJ limited Plaintiff's RFC to include only jobs with simple tasks and simple instructions, yet does not include in any discussion or analysis of this restriction in his decision. The ALJ afforded Dr. Karas' opinion great weight, but did not include in his RFC that Dr. Karas opined Plaintiff was unable to walk on heels and toes or squat and rise from a squatting position, nor did the ALJ explain why he chose not to include this portion of Dr. Karas' opinion in the RFC.

9

(ECF No. 10, pp. 58, 450). While the ALJ gives great weight to Dr. Karas' opinion that Plaintiff suffered mild to moderate limitations with walking, carrying, and lifting, the ALJ does not engage in any discussion or analysis in how these mild to moderate limitations translate to specific restrictions in completing work-like tasks in a typical eight hour work-day. RFC "is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." McCoy v. Schweiker, F.2d 1138, 1147 (8th Cir. 1982) (en banc). The ALJ stated that records that pertained to the period after Dr. Karas performed his consultative examination on December 13, 2013, showed Plaintiff was improving. (ECF No. 10, pp. 58-59). But, in the ALJ's own summary of the medical evidence, he noted Plaintiff underwent complex back surgery on April 22, 2014, and that, by May 20, 2014, she was suffering from chronic migraines with aura, walked with a cane after her back surgery, and had received nerve blocks and trigger point injections for her headaches. (ECF No. 10, pp. 55, 564). As noted previously, on August 25, 2014, Dr. Parker stated, "I don't expect her to be physically back where she was 7-8 years ago." (ECF No. 10, p. 847).

Upon review of the record as a whole, I find the ALJ failed to properly consider Plaintiff's alleged activities of daily living in light of her alleged impairments when assessing the credibility of her subjective complaints, and that the ALJ's RFC determination is not based on substantial evidence.

## IV.   **Conclusion:**

Based on the foregoing, on remand the ALJ is ordered to send Plaintiff for a new consultative examination and direct the examiner to provide a Medical Source Statement and RFC Assessment of Plaintiff with specific findings as to Plaintiff's ability to sit, stand, walk,

10

carry, lift, and to perform all the other tasks Plaintiff may be expected to perform during an eight hour work day. The examiner shall be provided with all records from Plaintiff's case relevant to his or her evaluation of Plaintiff. Upon receipt of the examiner's report, Plaintiff shall then be given the opportunity to appear and testify at a new administrative hearing regarding her applications for benefits.

The ALJ shall then return to step three of the sequential evaluation process and determine whether any of Plaintiff's medically determinable impairments, either alone or in combination, meet or medically equal the criteria of an impairment in the Listings. Should the ALJ then determine Plaintiff's impairments or the combination of her impairments are not of a severity to meet or medically equal the criteria of an impairment in the Listings, he shall determine Plaintiff's RFC. Then, the ALJ shall procure the expert testimony of a VE and present to him or her a hypothetical question which includes those impairments that the ALJ finds are substantially supported by the record as a whole and are indicated in the ALJ's RFC determination.

Accordingly, having carefully reviewed the record, the undersigned finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to Plaintiff should be and hereby is reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED this 20th day of July, 2017.

/s/ Erin L. Wiedemann
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE